FILED
04/09/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 3, 2019 Session

## IN RE ZAYLEE W.

**Appeal from the Chancery Court for Cannon County**
No. A17-06     Barry R. Tidwell, Judge

_____

### No. M2019-00342-COA-R3-PT

_____

A father appeals the trial court's decision to terminate his parental rights based on the grounds of (1) abandonment by willful failure to support, (2) substantial noncompliance with the permanency plan, and (3) failure to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child. He further challenges the trial court's finding by clear and convincing evidence that termination of his parental rights was in the best interest of the child. We affirm the trial court's termination of the father's parental rights but vacate the court's judgment regarding two of the grounds for termination.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Heather G. Parker, Murfreesboro, Tennessee, for the appellant, Eric W.

Catherine T. Mekis, Murfreesboro, Tennessee, for the appellee, Phyllis D.

Matthew D. Cowan, Woodbury, Tennessee, Guardian Ad Litem.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Eric W. ("Father") and Anndreya[1] W. ("Mother") are the biological parents of Zaylee W., born in June 2010. At the time of Zaylee's birth, both parents had substance

_____

[1] Mother's name also appears in the record spelled as "Andrea."

abuse issues and their lives were unstable. Consequently, when Zaylee was three weeks old, Mother left her in the care of the child's maternal great aunt, Phyllis D. ("Petitioner"), who has maintained physical custody of Zaylee since that time.

After Zaylee had resided with her for approximately three and a half years, Petitioner filed a petition in the Juvenile Court for Cannon County requesting that the child be declared dependent and neglected. On June 24, 2014, the juvenile court entered an agreed order executed by both parents that adjudicated the child dependent and neglected due to the parents' financial and residential instability. The court ordered that the child remain in Petitioner's custody but granted Father visitation with the child every other weekend from Friday at 5:00 p.m. until Sunday at 5:00 p.m. The court also ordered Father to pay child support in the amount of $25 per week and $1,500 towards the child's outstanding $3,000 dental bill.

On July 28, 2017, Petitioner filed a petition to terminate Father's parental rights and to adopt the child. The trial court heard the matter on February 26, 2018, and entered an order on July 12, 2018, terminating Father's parental rights after determining that three grounds for termination had been proven by clear and convincing evidence: (1) abandonment by willful failure to support, (2) substantial noncompliance with the permanency plan, and (3) failure to manifest an ability and willingness to assume legal and physical custody or financial responsibility of the child. The trial court further determined that there was clear and convincing evidence that termination of Father's parental rights was in the best interest of the child.[2] On August 6, 2018, Father filed a motion pursuant to Tenn. R. Civ. P. 59.04 requesting that the trial court alter or amend the judgment based on newly discovered evidence. The trial court denied the motion, and Father timely appealed.

On appeal, Father presents the following issues: (1) whether the trial court erred in finding by clear and convincing evidence that grounds existed to terminate his parental rights, (2) whether the trial court erred in determining that termination of his parental rights was in the best interest of the child, and (3) whether the trial court erred in denying his motion to alter or amend the judgment.

STANDARD OF REVIEW

Under both the federal and state constitutions, a parent has a fundamental right to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 249-50 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). Although this right is fundamental, it is not absolute and may be

---

[2] The trial court terminated Mother's parental rights in a separate proceeding, and she is not a party to this appeal.

terminated in certain situations. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has identified "'those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)).

Tennessee Code Annotated section 36-1-113 provides the grounds and procedures for terminating parental rights. First, a petitioner seeking to terminate parental rights must prove that at least one ground for termination exists. Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d at 251. Second, a petitioner must prove that terminating parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

The termination of a parent's rights is one of the most serious decisions courts make because "[t]erminating parental rights has the legal effect of reducing the parent to the role of a complete stranger," *In re W.B., IV*, 2005 WL 1021618, at *6, "and of 'severing forever all legal rights and obligations of the parent or guardian.'" *Id.* (quoting Tenn. Code Ann. § 36-1-113(l)(1)). Consequently, a parent has a constitutional right to fundamentally fair procedures during termination proceedings. *In re Hannah C.*, No. M2016-02052-COA-R3-PT, 2018 WL 558522, at *2 (Tenn. Ct. App. Jan. 24, 2018) (citing *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016)).

Tennessee law ensures fundamental fairness in termination proceedings by requiring a heightened standard of proof—clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Carrington H.*, 483 S.W.3d at 522. Before a parent's rights may be terminated, a petitioner must prove both the grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Serenity B.*, No. M2013-02685-COA-R3-PT, 2014 WL 2168553, at *2 (Tenn. Ct. App. May 21, 2014) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

We review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *In re Serenity B.*, 2014 WL 2168553, at *2. In light of the heightened standard of proof, we must then make our own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524.

ANALYSIS

I. Grounds for Termination.

A. Abandonment by failure to support.

The trial court terminated Father's rights to Zaylee pursuant to Tenn. Code Ann. § 36-1-113(g)(1), which provides that a parent's rights may be terminated if the parent abandons his or her child. For the purpose of terminating parental rights, Tenn. Code Ann. § 36-1-102 provides five alternative definitions of "abandonment." Under the relevant statutory definition, "abandonment" means:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i) (2017).[3] Thus, "'[a]bandonment can be established by showing that a parent *either* willfully failed to visit *or* willfully failed to support the child during the relevant time period.'" *In re Saliace P.*, No. W2015-01191-COA-R3-PT, 2016 WL 304543, at *4 (Tenn. Ct. App. Jan. 26, 2016) (quoting *In re Christopher M.*, No. W2010-01410-COA-R3-PT, 2010 WL 4273822, at *10 (Tenn. Ct. App. Nov. 1, 2010)); *see also In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005). The present case only involves a claim of willful failure to support, which is defined as "the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D) (2017). "Token support" is support that "is insignificant given the parent's means" in light of the circumstances of the case. Tenn. Code Ann. § 36-1-102(1)(B) (2017). In this context, "the word 'means' connotes both income and available resources for the payment of debt." *In re Adoption of Angela E.*, 402 S.W.3d 636, 641 (Tenn. 2013).

Under the law in effect when the termination petition was filed, the element of willfulness was essential to determining whether abandonment had occurred. *In re Audrey S.*, 182 S.W.3d at 863.[4] In termination proceedings, "'willfulness' does not

---

[3] The statute was amended effective July 1, 2018.

[4] Under the current version of Tenn. Code Ann. § 36-1-102, willfulness is an affirmative defense.

require the same standard of culpability as is required by the penal code." *Id.* Instead, it merely requires that a parent's conduct consist "of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id.* Abandonment does not occur, however, when a parent's "failure to visit or support is due to circumstances outside his control." *In re Adoption of Angela E.*, 402 S.W.3d at 640. For instance, a parent's failure to visit or to support is excused when another person's conduct prevents the parent "from performing his or her duty, or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child." *In re Audrey S.*, 182 S.W.3d at 864 (citations omitted).

"To prove the ground of abandonment, a petitioner must establish by clear and convincing evidence that a parent who failed to visit or support had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so." *In re Adoption of Angela E.*, 402 S.W.3d at 640. The question of whether a parent failed to support his or her child presents a question of fact, whereas the question of whether a parent's failure to support his or her child constitutes abandonment presents a question of law. *Id.* We review a trial court's conclusions of law de novo without a presumption of correctness. *Id.*

In the present case, Petitioner filed the petition to terminate Father's parental rights on July 28, 2017. Thus, the relevant four-month period for determining whether Father abandoned the child under Tenn. Code Ann. § 36-1-102(1)(A)(i) is March 28 to July 27, 2017. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) (holding that the applicable four-month time period for determining whether a parent has willfully failed to support is "the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed"). The trial court concluded that Father willfully failed to support the child during the relevant four-month period because he merely provided token support.

At trial, Father testified that he was employed during the relevant four-month period and earned approximately $1,750 per month. After paying $700 towards bills, Father had approximately $1,000 in discretionary income each month. Despite having the ability to pay some child support, Father admitted that he failed to make a single support payment or to pay his portion of the child's $3,000 dental bill during the relevant four-month period. He testified that he offered to pay child support to Petitioner several times, but she refused to accept the money and told him that "[s]he just wanted [him] to take care of Zaylee or stuff she needed for school supplies." Petitioner, on the other hand, adamantly denied ever telling Father to buy necessities for the child in lieu of paying child support. She stated that she has been the sole provider for the child's financial needs since birth. Other than gifts for birthdays and Christmas, Petitioner stated that Father had provided nothing for the child. Father stated that he spent approximately $25 per week on clothes and other necessities for the child during the relevant time

period but admitted that he kept those items at his home rather than sending them with the child to Petitioner's home.

The trial court considered Petitioner's testimony on the support issue to be more credible than Father's. Because trial judges "are 'uniquely positioned to observe the demeanor and conduct of witnesses,'" appellate courts afford considerable deference to a trial court's assessment of witness credibility. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). An appellate court will decline to re-evaluate a trial court's credibility determination unless there is "'clear and convincing evidence to the contrary.'" *Id.* (quoting *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)). A thorough examination of the record reveals no evidence that clearly and convincingly contradicts the trial court's credibility determination, so we leave that determination undisturbed. We conclude, therefore, that Petitioner proved by clear and convincing evidence that Father willfully failed to support the child during the relevant four-month period. Thus, the trial court did not err in concluding that Petitioner established the existence of this ground by clear and convincing evidence.

B. Substantial Non-compliance with the Permanency Plan.

The trial court also terminated Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(2), which provides that a parent's rights may be terminated where "[t]here has been substantial noncompliance by the parent . . . with the statement of responsibilities in a permanency plan pursuant to title 37, chapter 2, part 4." In making its determination, the trial court considered the June 24, 2014 agreed order as a permanency plan and concluded that Father substantially failed to comply with its requirements that he pay $25 per week in child support and $1,500 towards the child's outstanding dental bill. Father asserts that the trial court improperly relied upon the agreed order because the order did not constitute a properly created permanency plan. For reasons discussed below, we agree with Father's argument.

This case involves a private petition to terminate parental rights rather than a termination petition brought by the Department of Children's Services ("DCS"). Generally, substantial noncompliance is a termination ground relied upon by DCS, but a private party may also rely on it in situations where the child was placed in DCS protective custody and where DCS developed a proper permanency plan. *In re Michael W.*, No. E2019-00107-COA-R3-PT, 2020 WL 405473, at *8 (Tenn. Ct. App. Jan. 23, 2020) (citing *In re Kaleb N.F.*, No. M2012-00881-COA-R3-PT, 2013 WL 1087561, at *21 (Tenn. Ct. App. Mar. 12, 2013), and *In re Kah'nyia J.*, No. M2017-00712-COA-R3-PT, 2018 WL 2025217, at *8 (Tenn. Ct. App. Apr. 30, 2018)). The child in this case was never placed in DCS custody, and the record contains no permanency plans created by DCS. Moreover, DCS was not involved in any way with the creation of the June 24, 2014 agreed order relied on by the trial court. In fact, the record contains no evidence

that DCS has ever been involved in this case. Additionally, we note that Tenn. Code Ann. § 37-2-403(a)(2) requires that a permanency plan include the definitions of "abandonment" provided in Tenn. Code Ann. § 36-1-102 and the criteria and procedures for terminating a parent's rights. The June 24, 2018 order contains neither of these. Because Father had no stated responsibilities under a properly created permanency plan, we must conclude that Tenn. Code Ann. § 36-1-113(g)(2) may not serve as a ground for terminating Father's parental rights. We, therefore, vacate the trial court's ruling as to this ground.

### C. Failure to Manifest an Ability and Willingness to Personally Assume Custody.

The trial court found that Petitioner had proven by clear and convincing evidence that Father's parental rights should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(14). A court may terminate a parent's rights based on this ground if the parent

> [1] has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and [2] placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). This ground requires a party to prove two elements by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1), (g)(14). First, a party must prove that the parent failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14). Second, a party must prove that placing the children in the parent's "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14).

There is a split in authority regarding the proof required to establish the first prong of the analysis. In *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *12-15 (Tenn. Ct. App. June 20, 2018), a panel of this Court addressed the first prong by engaging in a complicated use of statutory construction and grammar rules to essentially conclude that the General Assembly's use of "and" in the phrase "an ability and willingness" actually means "or." Some panels of this Court have followed the decision in *In re Amynn K.* and concluded that a party is not required to prove a failure to manifest both a willingness and an ability to assume responsibility of the child. *See In re Jayda H.*, No. E2019-00855-COA-R3-PT, 2019 WL 6320503, at *9 (Tenn. Ct. App. Nov. 25, 2019) (stating that "consistent with the discussion in the *In re Amynn K.* decision, we do not view a parent's demonstration of 'willingness' as fatal to this ground when accompanied by a failure to manifest the requisite 'ability'"); *see also In re Nevaeh B.*, No. E2019-01539-COA-R3-PT, 2020 WL 1527001, at *10-12 (Tenn. Ct. App. Mar.

26, 2020); *In re Serenity S.*, No. E2019-00277-COA-R3-PT, 2020 WL 522439, at \*16 (Tenn. Ct. App. Jan. 31, 2020).

In *In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at \*7 (Tenn. Ct. App. May 31, 2018), a panel of this Court interpreted "and" as requiring a party to prove that a parent failed to manifest both an ability and a willingness. Under this interpretation, if a party proves only the "ability" criterion or the "willingness" criterion, the requirements of the statute are not met, and this ground may not serve as a basis for terminating parental rights. *Id.* We believe the interpretation found in *In re Ayden S.* is more consistent with the intent of the General Assembly.

Applying the interpretation in *In re Ayden S.*, Petitioner must prove by clear and convincing evidence that Father failed to manifest *both* an ability and willingness to personally assume legal and physical custody of the child or that he failed to manifest an ability and willingness to personally assume financial responsibility for the child. When evaluating ability, we focus "on the parent's lifestyle and circumstances." *Id.* "When evaluating willingness, we look for more than mere words." *Id.* Rather, a parent must have demonstrated willingness "by attempting to overcome the obstacles that prevent them from assuming custody or financial responsibility for the child." *Id.*

In regard to the second prong, Petitioner must establish by clear and convincing evidence "that placing the child in Father's custody would pose a risk of substantial harm to the physical or psychological welfare of the child." *Id.* at \*6. This court has described "substantial risk of harm" as follows:

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001) (footnotes omitted).

In its order terminating Father's parental rights, the trial court made clear conclusions of law regarding this ground for termination, but the only specific findings of fact it made pertained to the second prong of the analysis. Nowhere in its order did the trial court make any findings of fact regarding Father's ability and willingness to assume legal and physical custody child or his ability and willingness to assume financial responsibility of the child. Tennessee Code Annotated section 36-1-113(k) requires a trial court to "enter an order which makes specific findings of fact and conclusions of

law" in all termination of parental rights cases. If a trial court fails to comply with this requirement, we must remand the case for preparation of the necessary findings of fact and conclusions of law. *State v. McBee*, No. M2003-01326-COA-R3-PT, 2004 WL 239759, at *6 (Tenn. Ct. App. Feb. 9, 2004). Because the trial court failed to make sufficient findings of fact regarding Father's ability and willingness, we must vacate this ground for termination. As discussed above, however, at least one other ground exists to terminate Father's parental rights. Moreover, as discussed below, we affirm the trial court's conclusion that it is in the child's best interest to terminate Father's parental rights. Consequently, a finding that clear and convincing evidence exists to support the ground of failure to manifest and ability and willingness to assume physical and legal custody or financial responsibility of the child is unnecessary to uphold the trial court's termination of Father's parental rights. In light of the foregoing, remanding the case for reconsideration on this ground would merely prolong these proceedings without changing the end result. We, therefore, decline to remand this issue for reconsideration. *See In re Abbigail C.*, No. E2015-00964-COA-R3-PT, 2015 WL 6164956, at *14 (Tenn. Ct. App. Oct. 21, 2015) (declining to remand for reconsideration when the appellate court had affirmed both the existence of other grounds for termination and the trial court's best interest determination).

## II. Best Interest.

Having determined that clear and convincing evidence of at least one statutory ground exists to terminate Father's parental rights, we must next consider whether the trial court properly determined that termination of Father's parental rights is in the best interest of the child. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. After a court finds that clear and convincing evidence exists to support a ground for termination, the child's interests diverge from those of the parent and the court focuses on the child's best interests. *In re Audrey S.*, 182 S.W.3d at 877. A court must view the child's best interest from the perspective of the child, not that of the parent. *Id.* at 878. A finding that at least one ground for termination of parental rights exists does not necessarily require that a parent's rights be terminated. *Id.* at 877. Because some parental misconduct is redeemable, our termination of parental rights statutes recognize that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* The facts a court considers in its best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). Once a court makes the underlying factual findings, it should "consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." *Id.*

When considering whether terminating a parent's rights to a child is in the child's best interest, a trial court is to consider the following non-exclusive factors:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). A trial court is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Although in some circumstances "the consideration of one factor may very well dictate the outcome of the analysis," *In re Audrey S.*, 182 S.W.3d at 878, a court is still obligated

to consider "all the factors and all the proof." *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

Here, in its order terminating Father's parental rights, the trial court made detailed findings of fact regarding the best interest factors. The trial court found that Father had made such an adjustment of circumstance, conduct, or conditions as to make it safe for the child to be in his home. *See* Tenn. Code Ann. § 36-1-113(i)(1). Father testified that, upon learning that he was the child's father, he began improving his life by earning a GED, obtaining a valid driver's license, gaining both stable employment and housing, and covering Zaylee under his insurance.

The trial court also found that Father maintained regular visitation with the child. *See* Tenn. Code Ann. § 36-1-113(i)(3). Both Petitioner and Father testified that he consistently visited with the child every other weekend as permitted by the June 24, 2014 agreed order. Although Father maintained regular visitation with the child, the trial court found that a meaningful relationship had not been established between him and the child. *See* Tenn. Code Ann. § 36-1-113(i)(4). Father admitted that he did not routinely call the child during the two weeks between visits. He testified that he attempted to call the child one to three times but "couldn't get through." Petitioner, however, testified that she had never had any missed calls from Father. The trial court found Petitioner more credible on this issue, and Father presents no evidence clearly and convincingly contradicting this determination. The proof showed that Father did not participate in the child's education. He acknowledged that he had not attended a single parent/teacher conference and did not, in fact, know who the child's teacher was. In seven years, he only attended two or three of the school and church activities in which the child participated. He neither took the child to any of her medical appointments nor did he ever inquire as to her health. As the trial court noted, Father was more like a "fun uncle" than a parent who provided care for the child.

Next, the trial court found that a change of caretakers and physical environment was likely to have a negative effect on the child's emotional, psychological, and medical condition. *See* Tenn. Code Ann. § 36-1-113(i)(5). Petitioner testified that the child had resided with her since she was three weeks old. She was the child's primary caregiver and actively participated in the child's education, extracurricular activities, and church activities. Petitioner stated that the child was making good grades in school and had several friends.

The trial court also found that Father had shown neglect toward the child. *See* Tenn. Code Ann. § 36-1-113(i)(6). Father testified that he voluntarily agreed to the June 24, 2014 order adjudicating the child dependent and neglected by both parents and that he relinquished his superior parental rights.

The trial court found that Father's home was not safe for the child. *See* Tenn. Code Ann. § 36-1-113(i)(7). The court based this finding on Petitioner's testimony that

Father offered alcohol to Zaylee and another child and that he once held a knife to a girlfriend's throat while in the child's presence. Father denied both incidents. The court acknowledged that no tangible proof was offered regarding the veracity of these accusations but still considered them pertinent because Petitioner was a credible witness. On appeal, Father presents no evidence contradicting the trial court's determination.

Finally, the trial court found that Father failed to pay child support consistent with the child support guidelines. *See* Tenn. Code Ann. § 36-1-113(i)(9). The proof showed that Father failed to make a single child support payment and did not pay his half of the child's outstanding dental bill.

In light of the foregoing, we conclude that there is clear and convincing evidence to establish that termination of Father's parental rights is in the best interest of the child.

III. <u>Motion to Alter or Amend the Judgment</u>.

Father next argues that the trial court erred in denying his motion to alter or amend the judgment pursuant to Tenn. R. Civ. P. 59.04. The purpose of a Rule 59.04 motion is to allow trial courts "an opportunity to correct errors before a judgment becomes final." *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998). A court may grant a Rule 59.04 motion "(1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for sui generis reasons, a judgment should be amended to correct a clear error of law or to prevent injustice." *Id.* A court should not grant a Rule 59.04 motion, however, if it merely seeks "to relitigate matters that have already been adjudicated." *Id.* We review a trial court's ruling on a Rule 59.04 motion under an abuse of discretion standard. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). An abuse of discretion occurs when a trial court "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under the abuse of discretion standard, we may not substitute our judgment for that of the trial court. *Id.* An appellate court will not reverse a trial court's discretionary decision "'so long as reasonable minds can disagree as to propriety of the decision made.'" *Id.* (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

In his Rule 59.04 motion, Father requested that the trial court alter or amend the judgment based on newly discovered evidence. Specifically, he sought to admit receipts he claimed proved that he spent approximately $25 per week on necessities for the child. He also sought to admit evidence of returned mail he claimed contained money orders he sent to Petitioner but she rejected. The trial court denied Father's motion based on a finding that this evidence was not newly discovered. Newly discovered evidence is evidence that "was not known to the moving party prior to or during trial and . . . could not have been known to him through exercise of reasonable diligence." *Seay v. City of Knoxville*, 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983). Father stated in his appellate

brief that he gave this "new" evidence to his attorney prior to trial; this shows that Father clearly knew of the evidence prior to and during trial. Thus, the evidence was not newly discovered. We conclude, therefore, that the trial court did not abuse its discretion in denying Father's Rule 59.04 motion.[5]

CONCLUSION

We affirm the trial court's termination of Father's parental rights based on the ground of abandonment by failure to support the child. We vacate the trial court's decision terminating Father's parental rights based on the grounds of substantial noncompliance with the permanency plan and failure to manifest an ability and willingness to assume financial responsibility. We affirm the trial court's conclusion that it is in the best interest of the child to terminate Father's parental rights to the child. Costs of appeal are assessed against the appellant, Eric W., for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[5] Father asserts that he should receive a new trial because his attorney's failure to submit into evidence the receipts and returned mail rendered the termination hearing fundamentally unfair. Father's argument is essentially a claim of ineffective assistance of counsel. The Tennessee Supreme Court has held that a parent is unable to collaterally attack an order terminating parental rights based on ineffective assistance of counsel. *In re Carrington H.*, 483 S.W.3d at 535. This argument is without merit.